869 F.2d 1312
 F.E. TROTTER, INC.; W.H. McVay, Inc.; H.C. Cornuelle,
Inc., all professional corporations, the duly appointed,
qualified and acting Trustee Under the Will and of the
Estate of James Campbell, Deceased, acting in their
fiduciary and not in their corporate capacities, Plaintiffs-Appellants,
v.
James D. WATKINS, individually; H.H. Haynes, individually;
Timothy C. Kelly, individually; P.W. Drennon, individually;
Paul O'Connor, individually; Michael M. Dallam,
individually; H. Gray, individually; T.E. Gunn,
individually; Wayne K. Goodermote, individually; Harry B.
Robins, Jr., individually; J.W. Cook, individually; Jack
L. Busekrus, individually; Steven E. Starley, individually;
Alan Zusman, individually; PRC SPEAS, a California
corporation; PRC Planning & Economics, a California
corporation; PRC Engineering, a California corporation,
Defendants-Appellees,
and
J.J. Tanner, individually; Ronald Ahlfeldt, individually;
Jerry Fisher, individually; Steven Alverson, individually;
Doe Governmental Agencies 1-50, Doe Corporations 1-50, and
John Does 1-50, Defendants.
 No. 87-2817.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 16, 1988.
Decided March 10, 1989.
 
 Wayne Nasser, Ashford & Wriston, Honolulu, Hawaii, for plaintiffs-appellants.
 R. Joseph Sher, Dept. of Justice, Washington, D.C., for all defendants-appellees except PRC.
 Jerry M. Hiatt, Bays, Deaver, Hiatt, Kawachika & Lezak, Honolulu, Hawaii, for defendant-appellee PRC.
 Appeal from the United States District Court for the District of Hawaii.
 Before CHOY, O'SCANNLAIN and TROTT, Circuit Judges.
 O'SCANNLAIN, Circuit Judge:
 
 
 1
 In 1981, pursuant to the Air Installation Compatible Use Zone (AICUZ) Program the Department of the Navy hired PRC Engineering to conduct a study of the operations, procedures and aircraft noise and accident potential of the Naval Air Station, Barbers Point, Oahu, Hawaii. After incorporating changes suggested by the Navy, PRC submitted a draft of this study to the Navy in February, 1984. The Navy released a final version of the study in July 1984. This study examined existing development and proposed land use plans in areas surrounding the station, and explored operational alternatives to mitigate the impacts from aircraft noise and accident potential.
 
 
 2
 The trustees of the Campbell Estate (Campbell), a major landowner in the vicinity of Barbers Point, filed a complaint in the United States District Court for the District of Hawaii against a number of Navy and PRC officials and employees in their individual capacities.[1] The complaint alleged that the approval, publication and dissemination of the 1984 AICUZ study "significantly impacted and blighted at least 1,793 acres of Plaintiffs' lands." More specifically, the complaint alleged that the preparation of the AICUZ had not been in conformity with applicable regulations and had intentionally overstated aircraft noise and improperly established accident potential zones. In doing so the Navy and PRC allegedly conspired to manipulate data in order to impact Campbell's lands. Claiming that these activities violated their fifth amendment rights, Campbell requested declaratory relief and $160 million in actual and punitive damages.
 
 
 3
 The district court granted defendants' motion to dismiss these claims, holding that the Navy defendants were entitled to qualified immunity from the damage claims, because the rights allegedly violated by the conduct of defendants were not clearly established at the time of the alleged violation. The court also assumed without deciding that the suit could be brought against the PRC defendants directly under the fifth amendment, according to the principles articulated in Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The court then found that the PRC defendants were also entitled to qualified immunity. The court, in a holding not being appealed, also dismissed plaintiffs' claims for declaratory relief without prejudice. Finally, the court found that the complaint was not frivolous nor filed in bad faith, and denied the PRC defendants' motion for attorneys' fees.
 
 
 4
 The district court denied plaintiffs' motion to alter or amend judgment. The court adhered to its earlier conclusion that the rights allegedly violated were not clearly established rights. It further found that allowing plaintiffs to amend their complaint further would be futile, given that the court had already accepted all the plaintiffs' allegations as true for the purpose of ruling on immunity. The court declined to rule on potential additional grounds for dismissal.
 
 
 5
 Campbell timely appeals from these orders of dismissal and denial of leave to amend.
 
 
 6
 * For certain constitutional violations, governmental officials may be sued in their individual capacities for monetary damages or injunctive or declaratory relief. See Davis v. Passman, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979); Weiss v. Lehman, 642 F.2d 265 (9th Cir.), vacated and remanded on other grounds, 454 U.S. 807, 102 S.Ct. 80, 70 L.Ed.2d 76 (1981). These actions are often termed "Bivens actions," because they are based on the principles first enunciated in Bivens, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).
 
 
 7
 Here, the asserted constitutional bases for the suit are the due process and takings clauses of the fifth amendment. The due process guarantees of the fifth amendment, both substantive and procedural may serve as the foundation for a Bivens action. Bothke v. Fluor Eng'rs & Constructors, Inc., 834 F.2d 804, 814 (9th Cir.1987); Davis, 442 U.S. at 228, 99 S.Ct. at 2264. Although we are unaware of any case extending Bivens to the fifth amendment's takings clause, we will assume without deciding that a Bivens action is also available under that constitutional provision.
 
 II
 
 8
 Federal officials may raise a defense of qualified immunity to a Bivens action. Government officials performing discretionary functions enjoy qualified immunity from civil damages so long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Appellants argue that qualified immunity is not available because the functions performed were not discretionary and because the law prevailing at the time of the alleged violations clearly established that the Navy's actions violated the fifth amendment. We are unpersuaded by either claim.
 
 
 9
 Were the Navy Defendants' Actions Discretionary?
 
 
 10
 Qualified immunity shields only actions taken pursuant to discretionary functions. See, e.g., Davis v. Scherer, 468 U.S. 183, 196 n. 14, 104 S.Ct. 3012, 3020 n. 14, 82 L.Ed.2d 139 (1984). Campbell contends that qualified immunity does not attach because the Navy defendants' actions constituted breach of non-discretionary, or ministerial, duties. We reject this argument.
 
 
 11
 An AICUZ study analyzes aircraft noise and accident potential, determines land use compatibility, and explores operational alternatives and potential solutions to existing and potential land use conflicts. No law or regulation precisely specifies how this range of objectives should be accomplished. Indeed, these stated objectives do not lend themselves readily to formulaic determination. In producing an AICUZ the Navy is required to make particularized judgments about the present and potential land use compatibility between a Navy installation and the neighboring community, based on collected and projected data and operational decisions about the feasibility of mitigating the predicted impact. In our view, this exercise of judgment renders the production of an AICUZ a discretionary one. See Gagne v. City of Galveston, 805 F.2d 558, 560 (5th Cir.1986) ("[I]f an official is required to exercise his judgment, even if rarely or to a small degree, the Court would apparently not find the official's duty to be ministerial in nature").
 
 
 12
 Appellants contend that the Navy's failure to gather accurate data on current aircraft activity for use in the preparation of the AICUZ should not be considered an exercise of discretionary judgment. Even if we were to accept the premise that these aspects of the AICUZ study constituted ministerial acts of counting and measurement, we would nonetheless reject the conclusion that no immunity attaches to the preparation of an AICUZ. Parsing discretionary acts into their discretionary and ministerial components and protecting only the former would sharply curtail the protection for discretionary duties that qualified immunity is meant to furnish. See Ricci v. Key Bancshares of Maine, Inc., 768 F.2d 456, 464 (1st Cir.1985). Few official actions consist entirely of the unfettered exercise of discretion; most have some ministerial element. In our characterization of a duty as ministerial or discretionary, we therefore consider the duty as a whole. Here, for the reasons given above, we find that the preparation of an AICUZ is a discretionary function.
 
 
 13
 Appellants' contention that the Navy violated the AICUZ program's procedures and guidelines by miscounting planes and overstating noise levels does not affect our determination that these duties were discretionary. "A law that fails to specify the precise action that the official must take in each instance creates only discretionary authority; and that authority remains discretionary however egregiously it is abused." Davis, 468 U.S. at 196 n. 14, 104 S.Ct. at 3020 n. 14.
 
 
 14
 Did Existing Law Clearly Establish That the Navy's Actions
 
 
 15
 Would Violate the Fifth Amendment?
 
 
 16
 Having determined that the Navy's preparation of the AICUZ was a discretionary function, we must now determine whether the Navy defendants were entitled to qualified immunity for their actions. The relevant inquiry is whether a reasonable official could have believed his conduct was lawful in light of clearly established law and the facts of the case. See Thorsted v. Kelly, 858 F.2d 571, 573 (9th Cir.1988).
 
 
 17
 Case law gives some content to the term "clearly established." First, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, ----, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Second, in the absence of binding precedent, we must review all available decisional law including decisions of state courts, other circuits, and district courts to determine if the unlawfulness of the challenged action was clearly established. See Vaughan v. Ricketts, 859 F.2d 736, 739 (9th Cir.1988); Wood v. Ostrander, 851 F.2d 1212, 1217 (9th Cir.1988). The very action in question need not have previously been held unlawful, but in light of existing law, its unlawfulness must be apparent. See Todd v. United States, 849 F.2d 365, 371 (9th Cir.1988). However, government officials are not "charged with predicting the future course of constitutional law." Ostlund v. Bobb, 825 F.2d 1371, 1373 (9th Cir.1987), cert. denied, --- U.S. ----, 108 S.Ct. 2016, 100 L.Ed.2d 603 (1988). Our inquiry is a general one, focusing on whether the challenged actions constitute a violation of the right, rather than whether the right itself is clearly established. See Gutierrez v. Municipal Court, 838 F.2d 1031, 1048 (9th Cir.1988); Todd, 849 F.2d at 370.
 
 
 18
 With these general principles in mind, we turn to an analysis of the qualified immunity issue in this case. Campbell contends that reasonable persons in defendants' positions should have known that their actions violated two provisions of the fifth amendment: (1) due process, and (2) the takings clause. We consider these claims in turn.
 
 Substantive Due Process
 
 19
 Campbell argues that precedent clearly established that the government's actions violated substantive due process.[2] Campbell does not argue that the defendants violated their constitutional due process rights solely by publishing the 1984 AICUZ. Rather, Campbell states that "[t]he constitutional violation occurred because the AICUZ Study was deliberately false .... It is defendants' deliberate misconduct under color of law, with the intent to prevent [Campbell] from exercising their property rights, that lies at the heart of the constitutional violation in this case" (emphasis in original) (footnote omitted). Generally, an official's state of mind is not a factor in determining the application of qualified immunity. See Anderson, 107 S.Ct. at 3040; Tribble v. Gardner, 860 F.2d 321, 326 (9th Cir.1988). Immunity turns on the objective reasonableness of the official's conduct, not on a showing of subjective good faith. See Lowe v. City of Monrovia, 775 F.2d 998, 1011 (9th Cir.1985), amended, 784 F.2d 1407 (1986).
 
 
 20
 The Ninth Circuit, however, has recently held that in certain cases an inquiry into the defendant's motives is permissible for the purpose of evaluating a claim of immunity. See Gutierrez, 838 F.2d at 1053. Gutierrez held that a court must consider the actor's intent in carrying out the challenged act when addressing the issue of qualified immunity in cases in which unlawful motive is a critical element. Id. at 1051. A substantive due process claim requires proof that interference with property rights was irrational or arbitrary, see Bateson v. Geisse, 857 F.2d 1300 (9th Cir.1988); Hearn v. City of Gainesville, 688 F.2d 1328, 1332 (11th Cir.1982), arguably making unlawful motive a critical element of a substantive due process claim. We will therefore consider Campbell's allegation that the government officials acted in bad faith in our resolution of the qualified immunity issue. In so doing, however, we conclude that the district court correctly determined that the Navy defendants were entitled to qualified immunity. We are unpersuaded by Campbell's claim that relevant law clearly established that the Navy's actions would constitute a substantive due process violation for two reasons.
 
 
 21
 First, there is an absence of case law directly stating that the preparation of an advisory document using fabricated data is a violation of substantive due process. While some cases have found substantive due process violations resulting from irrational zoning decisions, we are aware of no case finding such a violation for a planning document whose recommendations are purely advisory. Since no cases have so held, the violation was not clearly established, thus immunizing Navy appellees.
 
 
 22
 Second, permitting a substantive due process claim to proceed to discovery on these facts would largely strip government officials of qualified immunity, subjecting the government to burdensome litigation on the basis of mere allegations of malice. For a plaintiff to circumvent the shield of qualified immunity he need merely allege bad faith on the part of government officials, stating a substantive due process claim. This would allow precisely the type of suit that qualified immunity is meant to prevent.
 
 The Takings Claim
 
 23
 Campbell argues that a reasonable official should have known that his performing an AICUZ study based on incorrect data was a violation of the takings clause of the fifth amendment. For the purposes of this appeal we assume that the preparation of an AICUZ constituted a taking. However, it is clear that the fifth amendment prohibits only takings without compensation or for a non-public use. Where just compensation is provided, the takings clause is not violated. See Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 697 & n. 18, 69 S.Ct. 1457, 1465 & n. 18, 93 L.Ed. 1628 (1949). Therefore, unless it can be shown that compensation would not be available for the alleged taking, it was not clearly established that the Navy's actions would infringe Campbell's constitutional rights, entitling the Navy defendants to qualified immunity.
 
 
 24
 Here, there was no clearly established constitutional violation, because Campbell can seek compensation from the federal government in the Court of Claims, pursuant to the Tucker Act, 28 U.S.C. Sec. 1491. The Tucker Act provides that "[t]he Court of Claims shall have jurisdiction to render judgment upon any claim against the United States ... founded ... upon the Constitution...." 28 U.S.C. Sec. 1491. Although the Tucker Act does not itself create a substantive right for compensation, the requisite substantive right is provided by the fifth amendment just compensation clause. See Regional Rail Reorganization Act Cases, 419 U.S. 102, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974); United States v. Causby, 328 U.S. 256, 267, 66 S.Ct. 1062, 1068, 90 L.Ed. 1206 (1946).
 
 
 25
 Campbell argues that a Tucker Act remedy may not be available on the facts of this case. The availability of a Tucker Act remedy is presumed on a showing that the challenged action was authorized and for a public use, unless Congress has manifested "an unambiguous intention to withdraw the Tucker Act remedy." Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1018, 104 S.Ct. 2862, 2880, 81 L.Ed.2d 815 (1984).
 
 
 26
 Campbell does not suggest that the legislative history of the statutes authorizing the AICUZ program reveals that Congress did not intend the Tucker Act to apply, nor does Campbell claim that the alleged taking was not for public use. Rather, Campbell maintains that the Navy's defendants' intentional misrepresentation of data used in the AICUZ renders the Tucker Act remedy unavailable, because the Tucker Act precludes recovery for acts by government agents beyond their statutory or constitutional authority. Appellants misconstrue the Tucker Act requirement that government liability attaches only when an officer acts within his authority.
 
 
 27
 The mere fact that a government official has acted illegally does not mean that he has exceeded his authority for Tucker Act purposes, relieving the government of liability. See Larson, 337 U.S. 682, 69 S.Ct. 1457. "The question ... is whether the defendant's actions are substantially in compliance with the powers granted to them by congressional statute or constitutional provisions. Recovery under the Tucker Act has been permitted when a taking by an officer is ... the result of an exercise of discretion granted to an official for the implementation of a congressional statute." Ramirez de Arellano v. Weinberger, 745 F.2d 1500 at 1523 (D.C.Cir.1984). Here, whatever misrepresentations may have been made, it is clear that the preparation of an AICUZ was within the contemplated scope of statutory authority.
 
 
 28
 Since it was not apparent that a Tucker Act remedy would be unavailable, there is no violation--at least no clearly established violation--of the takings clause of the fifth amendment, because there is no uncompensated taking. Cf. Duke Power Co. v. Carolina Environ. Study Group, Inc., 438 U.S. 59, 94 n. 39, 98 S.Ct. 2620, 2641 n. 39, 57 L.Ed.2d 595 (1978) (noting that a constitutional challenge to the Price-Anderson Act would fail in the event of a nuclear disaster where the Tucker Act remedy would still be available). We therefore hold that the Navy defendants were entitled to qualified immunity on the takings claim.
 
 III
 
 29
 Campbell offers two arguments in support of its conclusion that the district court abused its discretion in denying plaintiffs leave to amend the complaint or in refusing to amend the dismissal so as to be without prejudice. First, Campbell asserts that because discovery in the official capacity suit is under way, the government is already subject to discovery and suit on this set of factual circumstances. Thus, the rationale for qualified immunity voiced by the Supreme Court--avoiding burdening the government with discovery and suit--does not apply. See Harlow, 457 U.S. at 818, 102 S.Ct. at 2738. Campbell's reasoning does not take into account the fact that defending an additional suit places an additional burden on the government, thus implicating the concerns raised by Harlow. In addition, this argument does not go to the question of whether the district court erred in refusing to allow Campbell to amend the complaint or in refusing to dismiss the claims without prejudice. If the Navy appellees are entitled to qualified immunity and no restatement of Campbell's claim will alter that determination, it is irrelevant that subjecting appellees to trial would not be an additional burden.
 
 
 30
 Second, Campbell argues that the claim should be remanded with instruction to dismiss without prejudice until close of discovery in the companion case. Then, Campbell contends, the district court will be better able to evaluate if defendants are entitled to qualified immunity. This argument ignores the underlying justification for qualified immunity. Where defendants are entitled to qualified immunity because a court determines that no reasonable person in their position would have known that the challenged conduct was unlawful, such defendants are "entitled to dismissal prior to discovery." Anderson, 107 S.Ct. at 3042. In addition, for the purposes of evaluating the district court's dismissal of the suit, the court has assumed the truth of all the plaintiff's allegations. If, given that assumption, the court finds that defendants are immune, permitting discovery would be futile. We therefore hold that the district court correctly denied Campbell leave to amend the complaint and correctly refused to amend the dismissal so as to be without prejudice.
 
 IV
 
 31
 The district court assumed arguendo that a Bivens suit can be brought against a nongovernmental party such as PRC and held that PRC is entitled to qualified immunity. Although the district court was correct in its assumption that in this circuit a Bivens suit may be brought against a private party, provided the defendants are engaged in federal action,[3] see Ginn v. Mathews, 533 F.2d 477 (9th Cir.1976); Schowengerdt v. General Dynamics Corp., 823 F.2d 1328, 1337-38 (9th Cir.1987), we hold that qualified immunity is not available as a defense to private parties in a Bivens suit.
 
 
 32
 Because there is little case law on the issue of qualified immunity defenses for private parties to Bivens actions, we examine the analogous issue under 42 U.S.C. Sec. 1983. Because the immunities recognized in Bivens cases are coextensive with the immunities recognized in section 1983 cases, see Butz v. Economou, 438 U.S. 478, 500-01, 98 S.Ct. 2894, 2907-08, 57 L.Ed.2d 895 (1978); Harlow, 457 U.S. at 818 n. 30, 102 S.Ct. at 2738 n. 30 (same qualified immunity for state and federal officials); DeVargas v. Mason & Hanger-Silas Mason Co., 844 F.2d 714, 720 (10th Cir.1988) (conducting identical analyses of the qualified immunity claim of a private party to a Bivens suit and a section 1983 action), we conclude that the scope of immunity available to a private party in a Bivens action mirrors that available to a private defendant in a section 1983 action.
 
 
 33
 The Supreme Court has expressly reserved the question of whether private defendants enjoy qualified immunity under section 1983. See Lugar v. Edmondson Oil Co., 457 U.S. 922, 942 n. 23, 102 S.Ct. 2744, 2756 n. 23, 73 L.Ed.2d 482 (1982). In contrast, the Ninth Circuit has stated that private defendants are not entitled to qualified immunity in section 1983 actions.[4] See Howerton v. Gabica, 708 F.2d 380, 385 n. 10 (9th Cir.1983) ("there is no good faith immunity under section 1983 for private parties who act under color of state law to deprive an individual of his or her constitutional rights").[5] We read this statement to imply that in this circuit private parties are not entitled to qualified immunity for Bivens claims.
 
 
 34
 We therefore reverse the district court's grant of qualified immunity to the PRC defendants and remand for further proceedings consistent with this opinion.
 
 V
 
 35
 Campbell and PRC both request attorneys' fees on this appeal. After due consideration, we deny both requests. The parties shall bear their own costs on appeal.
 
 
 36
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 [1]
 Campbell also filed a companion action, based on the same facts, against the Department of the Navy, as well as a number of naval officers and employees who were sued in their official capacities. (Civil No. 86-1094). The district court denied defendants' motion to dismiss this action
 
 
 [2]
 Campbell asserted in oral argument that its due process claim was based on substantive rather than procedural due process. We therefore do not consider any procedural due process claim
 
 
 [3]
 Other circuits are divided on the issue of whether a Bivens action may be brought against a private party. Compare Reuber v. United States, 750 F.2d 1039 (D.C.Cir.1984) (holding such an action permissible), amended, 829 F.2d 133 (1987); Dobyns v. E-Systems, Inc., 667 F.2d 1219 (5th Cir.1982); Yiamouyiannis v. Chemical Abstracts Serv., 521 F.2d 1392 (6th Cir.1975) (per curiam), cert. denied, 439 U.S. 983, 99 S.Ct. 573, 58 L.Ed.2d 654 (1978) with Fletcher v. Rhode Island Hosp. Trust Nat'l Bank, 496 F.2d 927 (1st Cir.), cert. denied, 419 U.S. 1001, 95 S.Ct. 320, 42 L.Ed.2d 277 (1974) But cf. Gerena v. Puerto Rico Legal Servs., Inc., 697 F.2d 447, 449 (1st Cir.1983) (failing to rely on Fletcher for the proposition that a Bivens action cannot be brought against a private party); Stevens v. Morrison-Knudsen Saudi Arabia Consortium, 576 F.Supp. 516 (D.Md.1983), aff'd, 755 F.2d 375 (4th Cir.1985)
 
 
 [4]
 Other circuits have split on this issue. Compare Downs v. Sawtelle, 574 F.2d 1, 15-16 (1st Cir.), cert. denied, 439 U.S. 910, 99 S.Ct. 278, 58 L.Ed.2d 255 (1978) (private parties not entitled to immunity) with Buller v. Buechler, 706 F.2d 844, 850-53 (8th Cir.1983) (immunity attaches to private parties); Folsom Investment Co. v. Moore, 681 F.2d 1032, 1037-38 (5th Cir. Unit A 1982) (same); Jones v. Preuit & Mauldin, 851 F.2d 1321 (11th Cir.1988) (en banc) (same)
 
 
 [5]
 Kennerly v. United States, 721 F.2d 1252, 1259 (9th Cir.1983) is not to the contrary. Although this case states that Indian tribal officials subjected to a Bivens action as private parties would enjoy the same qualified immunity accorded to federal and state officials in section 1983 and Bivens actions, the holding of this case has not been extended outside the tribal context
 Nor is Thorne v. City of El Segundo, 802 F.2d 1131, 1140 n. 8 (9th Cir.1986), to the contrary. Thorne raises, but does not directly address, the question of whether private individuals can claim qualified immunity.