959 F.2d 240
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Kevin HOGAN, Plaintiff-Appellee,
v.
William VON RAAB, Commissioner of the U.S. Customs Service,
Duane Oveson, and James Hipsher, Defendants-Appellants.
 No. 91-35157.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 22, 1991.
Decided March 31, 1992.
 
 Before TANG, REINHARDT and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Kevin Hogan's fishing boat was seized pursuant to the Zero Tolerance Policy promulgated by the Commissioner of the United States Customs Service, William Von Raab, and enforced by other customs officials, including Duane Oveson and James Hipsher. The policy required all boats carrying any amount of controlled substance to be seized. Hogan's boat became subject to seizure under the policy when a customs agent discovered 1.7 grams of marijuana in the coat of a crewmember, Minh Van Le, on May 11, 1988. The vessel was returned to Hogan on June 10, 1988, and his fine was reduced to $1400.00 plus costs of seizure. However, Hogan could not work the month during which his boat was impounded, and he seeks damages due to implementation of the "illegal" Zero Tolerance Policy in violation of his statutory and constitutional rights. The district court denied Von Raab, Oveson and Hipsher's motion to dismiss on grounds of qualified immunity. They timely appeal, and we reverse.
 
 
 3
 "[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Ward v. County of San Diego, 791 F.2d 1329, 1332 (9th Cir.1986), cert. denied, 483 U.S. 1020 (1987). We must therefore determine whether the conduct complained of is discretionary, and if so, whether it violated clearly established rights.
 
 
 4
 * 19 U.S.C. § 1595a(a) authorizes seizure of vessels used in transportation of articles introduced into the United States contrary to law. When it was amended in 1986, "may be seized" was substituted for "shall be seized." The district court declined to dismiss because under its reading of this language, customs officials were not free to eliminate the Service's discretion. We disagree.
 
 
 5
 The amendment to section 1595a(a) does not specify the precise action that must be taken by customs officials. Nor does it prohibit the Commissioner from subjecting a sub-class of illegal contraband to mandatory seizure. In promulgating the Zero Tolerance Policy, Von Raab made a policy choice about the need for strict deterrence of violations of the narcotics laws. While we may disagree with how Von Raab struck this balance, the decision nonetheless remains a policy choice. It is precisely this type of decision-making that the qualified immunity doctrine insulates from the threat of damages actions. See Harlow, 457 U.S. at 814.
 
 
 6
 Von Raab exercised his discretion to require seizures in all cases involving the illegal transportation of drugs, while apparently not mandating automatic seizures in cases involving the transportation of other types of illegal contraband. The forfeiture statute permits the kind of seizure that occurred in this case.
 
 II
 
 7
 Nor did seizure of Hogan's boat violate clearly established statutory or constitutional rights.
 
 
 8
 * Hogan argues that changing "shall" to "may" clearly obliges customs officials to exercise discretion in each case. We see nothing in the amendment of § 1595a(a) or its legislative history that clearly requires the exercise of discretion before each seizure of a vessel transporting an illegal article.[1] At the time Hogan's boat was seized, no legal precedent had found the Zero Tolerance Policy to be unlawful, or required the exercise of individualized discretion prior to seizure. Cf. Ostlund v. Bobb, 825 F.2d 1371, 1374 (9th Cir.1987) (although there was an absence of case law directly on point, unlawfulness of the officers' conduct should have been apparent in light of preexisting case law), cert. denied, 486 U.S. 1033 (1988). Therefore, regardless of whether the Zero Tolerance Policy was a good idea or a bad idea, we cannot say that seizure of a vessel with contraband aboard was unauthorized under applicable law.
 
 B
 
 9
 Hogan's complaint alleges that the seizure and temporary holding of the F/V Holdtight was a violation of the fifth amendment prohibition against taking property without compensation. Even though the Supreme Court had stated in dicta that forfeiture might "give rise to serious constitutional questions" if an owner "proved not only that he was uninvolved in and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property," Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 689 (1974), neither Calero-Toledo nor any other case had extended this dicta to seizure. Accordingly, no matter whether Hogan was innocent, clearly established constitutional law does not reveal that the seizure of his boat was a taking.
 
 
 10
 Hogan's complaint further alleges that his first amendment rights to seek counsel and petition his congressman for a redress of grievances and his fifth amendment right to due process were violated. He avers that unnamed customs officials threatened that consulting legal counsel would "make it harder on [him]self" and that contacting his congressman "made the matter worse." Hogan does not allege that Von Raab, Oveson, or Hipsher was involved in any respect. None could be liable under the doctrine of respondeat superior, Terrell v. Brewer, 935 F.2d 1015, 1018 (9th Cir.1991), and Hogan does not allege that any of the defendants caused these remarks to be made, cf. Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir.1978). There was no legal precedent indicating that their conduct in adopting and enforcing the Zero Tolerance Policy would deprive Hogan of any clearly established first amendment right. Accordingly, they are entitled to qualified immunity on this claim as well.[2]
 
 
 11
 REVERSED.
 
 REINHARDT, Circuit Judge, concurring:
 
 12
 I concur in the result. Although I believe that Commissioner von Raab's zero tolerance policy was arbitrary and capricious and served to deny innocent persons their constitutional rights, I agree that, given the times, we cannot hold that this conclusion was so apparent that under Harlow v. Fitzgerald the law can be said to have been "clearly established."
 
 TANG, Circuit Judge, concurring:
 
 13
 I concur in the panel's disposition. I fear, however, that the decision fails adequately to explain why Oveson and Hipsher are entitled to qualified immunity. Harlow v. Fitzgerald immunity appropriately attaches to Commissioner Von Raab because his decision to adopt the Zero Tolerance Policy was an exercise of discretion. By contrast, neither Oveson nor Hipsher exercised discretion in seizing Hogan's boat. Oveson and Hipsher simply enforced the Zero Tolerance Policy as promulgated. The policy left them no discretion to exercise; it specified the precise action to be taken by the officials. Accordingly, they do not satisfy the prerequisites for Harlow v. Fitzgerald immunity. 457 U.S. at 818 ("[G]overnment officials performing discretionary functions, generally are shielded from liability....") (emphasis added); see also Westfall v. Erwin, 484 U.S. 292, 298 n. 4 (1988) ("[O]nly discretionary functions are immune from liability."); Davis v. Scherer, 468 U.S. 183, 196 n. 14 (1984); F.E. Trotter, Inc. v. Watkins, 869 F.2d 1312, 1314 (9th Cir.1989) ("Qualified immunity shields only actions taken pursuant to discretionary functions."); J. Cook & J. Sobieski, 1 Civil Rights Actions § 2.06[B] (1991 & Supp); cf. Berkovitz by Berkovitz v. United States, 486 U.S. 531, 536 (1988) (in Federal Tort Claims Act cases, the discretionary function exception will not apply if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow).
 
 
 14
 This lack of discretion does not preclude a grant of qualified immunity to Oveson and Hipsher. Their objectively reasonable enforcement of a not clearly unconstitutional regulation entitles them to qualified immunity, as long as they acted in good faith. See Kentucky v. Graham, 473 U.S. 159, 166-67 (1985) ("objectively reasonable reliance on existing law" creates immunity); Pierson v. Ray, 386 U.S. 547, 555-57 (1967) (the same considerations that permit immunity for arrests made with good faith and probable cause "would seem to require excusing [officers] from liability for acting under a statute that [they] reasonably believed to be valid"); Jacobson v. Tahoe Regional Planning Agency, 566 F.2d 1353, 1365 (9th Cir.1977), aff'd in part and rev'd on other grounds, 440 U.S. 391 (1979) (to defeat invocation of qualified immunity, plaintiff must "show something more than an evenhanded enforcement by the defendants of an ordinance with which he disagrees"); cf. Milton v. Nelson, 527 F.2d 1158, 1160 (1976) ("Even if the regulations are subsequently found to be invalid a defendant's good faith enforcement of these regulations can still be a defense to a section 1983 suit."). Given our holding that the Zero Tolerance Policy is not clearly unconstitutional, Oveson's and Hipsher's reliance on the regulation was objectively reasonable. Hogan makes no allegation, moreover, that Oveson and Hipsher did not act in good faith in enforcing the regulation.
 
 
 15
 I therefore agree that reversal is warranted. I write separately only to emphasize that the source of Von Raab's qualified immunity differs from Oveson's and Hipsher's.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Discretion was, of course, exercised with respect to forfeiture of Hogan's boat
 
 
 [2]
 Hogan has sued Von Raab, Oveson, and Hipsher in both their personal and their official capacities. Qualified immunity does not apply to official capacity actions. Kentucky v. Graham, 473 U.S. 159, 167 (1985). Our ruling thus does not affect the viability of Hogan's official capacity actions against those defendants
 Additionally, Hogan's complaint requests injunctive and declaratory relief, as well as monetary damages. Qualified immunity only protects defendants against damage claims. It does not apply to actions for declaratory and injunctive relief. Wood v. Strickland, 420 U.S. 308, 314 n. 6 (1975). Our decision therefore does not impact Hogan's ability to pursue the requested equitable relief.