76 F.3d 692
 64 USLW 2514
 VECTOR RESEARCH, INC.; Steven Fuhr; Barry Wade; and Paul
Depinet, Plaintiffs-Appellants,
v.
HOWARD & HOWARD ATTORNEYS P.C.; William J. Clemens;
Marshall & Melhorn; Richard G. Martin; Thomas
Gutwald; Steven Goldner; and Joseph
Smrcka, Defendants-Appellees.
 No. 94-3875.
 United States Court of Appeals,
Sixth Circuit.
 Argued Dec. 4, 1995.
Decided Feb. 14, 1996.
Rehearing and Suggestion
for Rehearing En Banc
Denied April 8, 1996.
 
 Jack G. Fynes, Stephen A. Rothschild (argued and briefed), Shumaker, Loop & Kendrick, Toledo, OH, for plaintiffs-appellants.
 James H. Geary (argued and briefed), Howard & Howard, Kalamazoo, MI, Thomas W. Palmer, Marshall & Melhorn, Toledo, OH, Jon H. Kingsepp, Howard & Howard, Bloomfield Hills, MI, for defendants-appellees.
 Before: BROWN, NELSON, and MOORE, Circuit Judges.
 BAILEY BROWN, J., delivered the opinion of the court, in which MOORE, J., joined. DAVID A. NELSON, J. (pp. 701-702), delivered a separate opinion concurring in part and dissenting in part.
 BAILEY BROWN, Circuit Judge.
 
 
 1
 This appeal arises from a dispute between two rival manufacturers of anthropomorphic test devices (ATDs), more commonly known as crash test dummies. First Technology Safety Systems, Inc. (FTSS), asserting that Vector Research, Inc. (Vector) had violated the Copyright Act, had stolen trade secrets, and had violated employee confidentiality agreements, obtained an ex parte order authorizing the seizure of certain allegedly infringing materials and other evidence of Vector's alleged wrongful conduct. United States Marshals, private lawyers representing FTSS, FTSS employees, and others conducted the seizure at Vector's premises. This court later held, in a case of first impression in this circuit, that portions of the ex parte order were invalid and that its issuance was an abuse of discretion. First Technology Safety Sys. v. Depinet, 11 F.3d 641 (6th Cir.1993).
 
 
 2
 Meanwhile, Vector and three of its employees had sued the private participants in the search and seizure in Ohio state court on state law tort theories, and the individual plaintiffs added Bivens federal constitutional claims after the defendants removed the case to federal court.[1] The defendants then moved to dismiss the plaintiffs' amended complaint for failure to state a claim upon which relief could be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), and the district court granted the motion. Plaintiffs then appealed. We AFFIRM the district court's dismissal of the plaintiffs' state law claims against one of the lay defendants. We conclude, however, that the district court erred in dismissing the plaintiffs' remaining claims. Thus, we REVERSE those dismissals and REMAND those claims for further proceedings.
 
 I. FACTS AND BACKGROUND
 
 3
 A. The prior case.
 
 
 4
 FTSS was, before December of 1990, America's sole designer and manufacturer of ATDs. FTSS owned many copyrights, trade secrets, inventions, and trademarks for ATDs, and for related computer calibration programs, components, and manufacturing processes. FTSS also possessed customer lists, contracts, pricing information, and marketing strategies typical of any manufacturing firm.
 
 
 5
 On December 18, 1990, plaintiff Fuhr left FTSS to form Vector, which he and plaintiff Wade incorporated the next day. Wade, also an FTSS employee, remained at FTSS for sixteen more days before joining Vector. Plaintiff Depinet left FTSS to join Vector in March of 1991. Vector intended to compete with FTSS in the design and production of ATDs and related computer software.
 
 
 6
 FTSS eventually filed a complaint against Vector, Fuhr, Wade, and Depinet, alleging copyright infringement, unfair trade practices, unfair competition, conversion, receiving and concealing trade secrets, and tortious interference with contracts and business advantage. FTSS simultaneously filed an emergency motion for an ex parte order authorizing a search of Vector's premises, pursuant to the Copyright Act, 17 U.S.C. § 503, the Supreme Court Rules of Copyright Practice (the Copyright Rules) which appear following 17 U.S.C. § 501, and Federal Rule of Civil Procedure 65(b). In support of its request, FTSS alleged that Vector had engaged in numerous business activities that could only have been possible with the use of proprietary FTSS information, and that Vector and its employees therefore must have violated copyright laws and employee confidentiality agreements.
 
 
 7
 The district court issued an order authorizing the United States Marshal and persons acting under the Marshal's supervision, including representatives of FTSS, to inventory, impound, inspect, copy, and photograph certain materials on Vector's premises, or anywhere else the materials might be found. Only materials belonging to FTSS and bearing the name of FTSS or one of its corporate predecessors could be taken from Vector. The search party was to copy everything else and return the originals to Vector. Either the marshals, or FTSS's counsel in trust for the court, was to hold the impounded material.
 
 
 8
 On April 8, 1992, two U.S. Marshals, FTSS's Michigan counsel (Howard & Howard, represented by Clemens), three FTSS employees (Gutwald, Goldner, and Smrcka), and FTSS's Ohio counsel (Marshall & Melhorn, represented by Martin), and others, went to Vector's premises in Milan, Ohio to conduct the search. The federal marshals stayed only an hour, but the rest of the search party remained for another five hours. The Marshall & Melhorn firm held the seized materials in trust for eight days until the district court held a hearing that dealt with a motion Vector had made to vacate the impoundment order.
 
 
 9
 The district court denied Vector's motion, concluding that either the Copyright Act, the Copyright Rules, or Rule 65 authorized the ex parte order. Marshall & Melhorn then transferred the impounded materials to the custody of the district court. Vector appealed, and this court held that the district court had abused its discretion in issuing the order. First Technology Safety Sys., 11 F.3d at 652.
 
 
 10
 This court rejected Vector's arguments that the order failed to comply with the technical requirements of the Copyright Rules, but did hold that the order was "too broad to fall within the authorization of 17 U.S.C. § 503 and the Copyright Rules." Id. at 649. This court noted that section 503(a) of the Copyright Act authorizes the impoundment of materials that infringe copyrights, or equipment that can be used to copy infringing goods, and that the Copyright Rules authorize seizures and mandate the return of articles seized for any reason not appropriate under the Copyright Act. The court reasoned, however, that the business records seized were neither infringing goods nor materials that could be used to copy such goods, but rather were only "possible evidence of the alleged infringement." Id. Because this court saw no congressional intent to give a copyright holder a means to preserve evidence generally, it held that Vector's business records were not subject to impoundment under the statute, and thus that portion of the order was not authorized by law.
 
 
 11
 Moreover, this court stated that because section 503 did not authorize the order as issued, the Copyright Rules did not provide the proper procedure for obtaining it, and thus the district court should have proceeded under Rule 65(b) to determine the propriety of granting injunctive relief ex parte. Id. at 649-50 (citations omitted). The court stated that, on the rare occasions when ex parte temporary restraining orders are proper, they "should be limited to preserving the status quo only for so long as is necessary to hold a hearing." Id. at 650 (citing Granny Goose Foods, Inc. v. Brotherhood of Teamsters, 415 U.S. 423, 439, 94 S.Ct. 1113, 1124, 39 L.Ed.2d 435 (1974)). Applying that maxim and the language of Rule 65(b) to the facts, this court held that FTSS failed to demonstrate that ex parte relief was warranted, primarily because FTSS did not show that appropriate circumstances existed--i.e., that Vector was likely to take advantage of an opportunity to conceal or destroy evidence (and thereby render further prosecution of the action fruitless) if it had notice of the order. Id. at 651.
 
 
 12
 B. The instant case.
 
 
 13
 While the appeal of the ex parte order entered in the action brought by FTSS was pending in this court, the plaintiffs in the instant case, as heretofore indicated, filed this suit in Ohio state court. They alleged that the process by which FTSS and the attorney defendants obtained and executed the search order was tortious, and that it included the taking of confidential information belonging to Vector. Plaintiffs also alleged that a partner in one of the defendant law firms, Howard & Howard, was also an officer in FTSS, and that all the defendants sought and executed the order with malicious and illegal motives. Finally, plaintiffs alleged that the entire process caused them, inter alia, embarrassment, humiliation, outrage, mental suffering, and the loss of a supplier.
 
 
 14
 The defendants in the instant case, as heretofore stated, removed the case to federal district court, claiming there was federal question jurisdiction because the claims "attacked the legitimacy" of the district court's order in the prior case, and because, they asserted, this is "an action under 28 U.S.C. § 1356," which gives district courts original and exclusive jurisdiction over seizures not within admiralty and maritime jurisdiction.[2] The defendants then answered, asserting that (1) they had acted in good faith, and (2) no specific facts demonstrated that they either misled or perpetrated a fraud upon the court. The plaintiffs then amended their complaint, with the individual plaintiffs adding Bivens claims against only the attorney defendants for violations of their Fourth Amendment rights.[3]
 
 
 15
 The defendants moved, under Rule 12(b)(6), to dismiss the complaint for failure to state a claim upon which relief could be granted, and the district court granted the motion. With regard to the state law claims, the court held that because the attorney defendants enjoyed qualified immunity from liability under Ohio law absent a showing of malice, and because the plaintiffs could not point to allegations in their complaint which, if true, would demonstrate malice, there was no valid claim against the attorneys.[4]
 
 
 16
 As to one FTSS employee defendant, Gutwald, the district court found no link in the complaint between him and the conduct about which the plaintiffs complained. As to the other FTSS employee defendants, Goldner and Smrcka, the court held that they had a complete defense to the plaintiffs' state law claims by virtue of their reliance upon advice of counsel.
 
 
 17
 Finally, with regard to the Bivens claims, the district court expressly assumed that the attorney defendants were, as alleged, federal actors, but held that they enjoyed qualified immunity because their conduct did not violate clearly established constitutional or statutory rights of which a reasonable person would have known. Plaintiffs timely appealed.
 
 II. ANALYSIS
 
 18
 A. Standard of review.
 
 
 19
 We review a district court's dismissal of a claim pursuant to Rule 12(b)(6) de novo. E.g., In re DeLorean Motor Co., 991 F.2d 1236, 1239-40 (6th Cir.1993). We must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of the claims that would merit relief. E.g., Gazette v. City of Pontiac, 41 F.3d 1061, 1064 (6th Cir.1994). Under the liberal federal system of notice pleading, all that a plaintiff must do in a complaint is give a defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957); see also Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993) (rejecting heightened pleading standard in civil rights cases alleging municipal liability under 42 U.S.C. § 1983).
 
 
 20
 B. The Bivens claims against the attorney defendants.
 
 
 21
 In Bivens, 403 U.S. at 389, 91 S.Ct. at 2001, the Supreme Court held that when "a federal agent acting under color of his authority" violates the Constitution, the agent's victim may recover damages against the agent. Such claims are the counterpart to suits under 42 U.S.C. § 1983 against state officials who infringe plaintiffs' federal constitutional or statutory rights. See Butz v. Economou, 438 U.S. 478, 503-04, 98 S.Ct. 2894, 2909-10, 57 L.Ed.2d 895 (1978); McSurely v. Hutchison, 823 F.2d 1002, 1005 (6th Cir.1987), cert. denied, 485 U.S. 934, 108 S.Ct. 1107, 99 L.Ed.2d 269 (1988). In the instant case, the individual plaintiffs alleged in their amended complaint that the attorney defendants were "federal agents and actors" by virtue of their presence with the U.S. Marshals at the search, and that the search violated their Fourth Amendment rights. The district court expressly assumed that the defendants were federal agents, but held that they could rely on qualified immunity because they did not violate any clearly established rights of the plaintiffs. See, e.g., Cagle v. Gilley, 957 F.2d 1347, 1348 (6th Cir.1992).
 
 
 22
 Before we reach the question of qualified immunity, however, we must first determine whether the defendant attorneys were correct in their contention that they could have no Bivens liability because they were not "federal employees." In support of this contention, they rely on Wagner v. Metropolitan Nashville Airport Authority, 772 F.2d 227, 230 (6th Cir.1985).
 
 
 23
 In Wagner, the majority opinion did hold that the district court did not err in granting summary judgment for the defendant with respect to a Bivens claim because the complaint did not "allege that [the] defendant ... was a federal employee." Id. Before stating its holding, however, the majority opinion also interpreted Bivens to hold that "[T]he victims of a constitutional violation by a federal agent have a right to recover damages in a federal court." Id. (emphasis added). Accordingly, it is not clear whether the majority intended to hold that the agent who is the defendant must be on the government payroll to be subject to Bivens liability or, as plaintiffs contend, it is sufficient, as alleged here, that he be authorized to perform a government task as a government agent or actor. We also note that in Wagner, Judge Martin concurred in the result but pointed out that "the plaintiff's complaint is completely devoid of any allegation of federal action." Id. at 231 (Martin, J., concurring). Moreover, if Wagner be read to require that the person alleged to be liable under Bivens must be on the government payroll, it would conflict with an earlier decision of this court, Yiamouyiannis v. Chemical Abstracts Service, 521 F.2d 1392, 1393 (6th Cir.1975) (per curiam) (holding that a plaintiff stated a Bivens claim against a private party which allegedly received federal funding).
 
 
 24
 Lastly, as will be seen infra, in Wyatt v. Cole, 504 U.S. 158, 159, 112 S.Ct. 1827, 1828-29, 118 L.Ed.2d 504 (1992), the Supreme Court held that a party who is not a public official may be liable under 42 U.S.C. § 1983 and yet not be entitled to qualified immunity because, if not a public official, the reason for affording qualified immunity does not exist. Applying this reasoning to the instant case, we hold that a party not a public official may be liable under Bivens, but not entitled to qualified immunity because the reason for affording qualified immunity to a public official does not apply to a government actor who is not a public official.
 
 
 25
 The plaintiffs in the instant case alleged that the defendant attorneys were federal agents or actors in that they acted in concert with federal marshals in executing the ex parte order. We thus hold that the plaintiffs have alleged enough facts on the issue of whether the defendants were "federal agents" to survive a motion to dismiss. Cf. Lugar v. Edmondson Oil Co., 457 U.S. 922, 937, 102 S.Ct. 2744, 2753-54, 73 L.Ed.2d 482 (1982) (setting forth test for whether a private actor is subject to liability for civil rights violations under 42 U.S.C. § 1983).
 
 
 26
 That holding does not, as we have indicated, end the matter. While defendants who are not government employees may, as we have held, be properly sued under the Bivens doctrine, they may not enjoy qualified immunity from suit in the same manner as federal officials, who may invoke this doctrine if they did not violate any clearly established constitutional or statutory rights of the plaintiffs of which a reasonable person would have known. See, e.g., Cagle, 957 F.2d at 1348.
 
 
 27
 The Supreme Court has held that "private defendants charged with 42 U.S.C. § 1983 liability for invoking state replevin, garnishment, and attachment statutes later declared unconstitutional" are not entitled to qualified immunity. Wyatt, 504 U.S. at 159, 112 S.Ct. at 1829. The Court reasoned that the rationale for granting qualified immunity to public officials--that they would act decisively in their jobs for the public good without fear of being sued--did not apply with equal force to private parties acting for their own ends. Id. at 167-68, 112 S.Ct. at 1833-34.
 
 
 28
 Because Bivens immunity generally is co-extensive with section 1983 immunity, the Wyatt case stands for the proposition that the attorney defendants, as private parties who allegedly acted as government agents in conducting this search and seizure, may not claim qualified immunity from the plaintiffs' Bivens action. Thus, the district court's holding was in error. See Butz, 438 U.S. at 504, 98 S.Ct. at 2909 (deeming it "untenable to draw a distinction for purposes of immunity law between suits brought against state officials under § 1983 and suits brought directly under the Constitution against federal officials"); F.E. Trotter, Inc. v. Watkins, 869 F.2d 1312, 1318 (9th Cir.1989) (stating that "the scope of immunity available to a private party in a Bivens action mirrors that available to a private defendant in a section 1983 action"). After Wyatt, as one sister circuit has put it, "[t]he availability of qualified immunity to private persons who act under color of law is no longer an open question. It is settled. Private persons cannot assert it." Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1276 (3d Cir.1994).
 
 
 29
 The attorney defendants do, however, retain a good faith defense to the plaintiffs' Bivens claim. The Wyatt Court expressly left open the question of whether private parties acting under color of law could raise such a defense. Wyatt, 504 U.S. at 169, 112 S.Ct. at 1834. When the Wyatt case returned to the Fifth Circuit on remand, that court held that private persons who act under color of law may assert a good faith defense. Wyatt v. Cole, 994 F.2d 1113, 1120 (5th Cir.), cert. denied, --- U.S. ----, 114 S.Ct. 470, 126 L.Ed.2d 421 (1993). The Third Circuit has agreed. Jordan, 20 F.3d at 1276-77. Now, so do we.
 
 
 30
 Any good faith defense must, however, be resolved on remand and not on this Rule 12 motion to dismiss. As this court stated in conjunction with its own holding, prior to the Supreme Court's decision in Wyatt, that private defendants could not claim qualified immunity in section 1983 cases, "A good faith defense ... is likely to be based in large part on the facts of the case, with the suit only being dismissed after trial, or on summary judgment if the defendant can show that there is no material dispute as to the facts." Duncan v. Peck, 844 F.2d 1261, 1266 (6th Cir.1988).[5]
 
 
 31
 C. The state law claims against the attorney defendants.
 
 
 32
 The plaintiffs' state law tort claims against the attorney defendants break down as follows. Vector, the corporate plaintiff, sued for trespass, conversion, abuse of process, and malicious use of civil process. The individual plaintiffs sued for invasion of privacy, abuse of process, and malicious use of civil process. The plaintiffs' amended complaint repeatedly alleges that the attorney defendants acted maliciously in their pursuit and execution of the ex parte order, that they shared the malicious motives of their client, FTSS, that they improperly handled personal and confidential information, and that they exceeded the scope of the order, all with resulting harm.
 
 
 33
 Under Ohio law, attorneys enjoy immunity from liability to third persons arising from acts performed in good faith on behalf of, and with the knowledge of, their clients. There is no immunity, however, where attorneys act maliciously. Scholler v. Scholler, 10 Ohio St.3d 98, 462 N.E.2d 158, 163 (1984).
 
 
 34
 The district court stated that it had no facts before it on the issues of good faith or client knowledge. The court then proceeded to analyze several Ohio cases, and it held that the plaintiffs had not pleaded facts sufficient to demonstrate malice and overcome the defendants' immunity. The court cited no authority, however, for the heightened pleading standard it imposed on the plaintiffs.
 
 
 35
 Under Federal Rule of Civil Procedure 9(b), malice "may be averred generally." This is so because malice, like the other mental conditions which may be averred generally under Rule 9(b), is difficult to demonstrate at the pleading stage of litigation. 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1301 (1990). Moreover, under Rule 8(a)(2), a claim need only be "a short and plain statement ... showing that the pleader is entitled to relief." An attempted demonstration of malice in a complaint would, in all likelihood, be neither short nor plain.
 
 
 36
 The liberal federal pleading rules are directly on point, and those rules enable a plaintiff (as was done here) to allege malice coupled with tortious acts and survive a motion to dismiss. Thus, the district court erred in dismissing the plaintiffs' state law claims against the attorneys on a Rule 12(b)(6) motion. The plaintiffs here may struggle to establish malice, but accepting all of the plaintiffs' allegations--including those of malice--as true, they could perhaps prove a set of facts that would merit relief on their state law tort claims. At this point in the litigation, that is sufficient.
 
 
 37
 D. The state law claims against the lay defendants.
 
 
 38
 We agree with the district court's dismissal of the plaintiffs' state law claims against Gutwald, but we disagree with its dismissal of the claims against Goldner and Smrcka.[6] As the district court noted, although Gutwald was named in the plaintiffs' complaint as an FTSS employee, the plaintiffs failed to follow through and link him to any of the conduct at issue. Thus, no claim is stated as to him. The district court erred, however, when it based its dismissals of the abuse of process and invasion of privacy claims against Goldner and Smrcka on their purported reliance on the advice of counsel. As the plaintiffs point out, advice of counsel is an affirmative defense, and the defendants did not plead it in their answer. Francis v. City of Cleveland, 78 Ohio App.3d 593, 605 N.E.2d 966, 968 (1992) (citing Reenan v. Klein, 3 Ohio App.3d 142, 444 N.E.2d 63, 65 (1981)); see also Fed.R.Civ.P. 8(c) (directing litigants to "set forth affirmatively" their affirmative defenses).
 
 
 39
 Moreover, under the liberal federal pleading rules discussed above, the plaintiffs have stated claims for abuse of process and invasion of the individual plaintiffs' privacy. The complaint alleges that Goldner and Smrcka (1) participated in the search, both with and without the presence of the federal marshals who were to supervise them; (2) reviewed confidential materials belonging to the plaintiffs;[7] and (3) did so with ulterior purposes and resulting harm. Accepting those allegations as true, it is possible that the plaintiffs could prove facts supporting those claims that would merit relief. Again, at this stage, that is all the plaintiffs need be able to do.
 
 III. CONCLUSION
 
 40
 We AFFIRM the district court's dismissal of the plaintiffs' state law tort claims against individual defendant Gutwald. We REVERSE the dismissal of the plaintiffs' Bivens claims, as well as their state law claims against the attorney defendants and individual defendants Goldner and Smrcka. We REMAND those claims to the district court for further proceedings consistent with this opinion.
 
 
 41
 DAVID A. NELSON, Circuit Judge, concurring in part and dissenting in part.
 
 
 42
 I agree that the district court was correct in dismissing the claims against defendant Gutwald, but I would affirm the dismissal of the claims against the attorney defendants as well.
 
 
 43
 The United States Supreme Court has never held that persons not employed by the federal government are subject to liability under the theory adopted in Bivens v. Six Unknown Named Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). And our circuit has flatly declared, in a published opinion, that a plaintiff's failure to allege in his complaint that a defendant was a federal employee "renders the pleading insufficient under Bivens." Wagner v. Metropolitan Nashville Airport Authority, 772 F.2d 227, 230 (6th Cir.1985).
 
 
 44
 It is true, as Judge Martin pointed out in his concurring opinion in Wagner, that the complaint in that case not only failed to allege that the defendant was a government employee, it also failed to allege that he was a government "agent." Id. at 231, n. 1 (Martin, J., concurring). But if the court had intended to rest its decision on the fact that the complaint did not allege that the defendant was either an agent or an employee of the federal government, I assume that the court would have said so.[1]
 
 
 45
 If Wagner means what it says, I am not sure it is in conflict with Yiamouyiannis v. Chemical Abstracts Service, 521 F.2d 1392 (6th Cir.1975). Yiamouyiannis, as Judge Starr has pointed out, may appropriately be characterized "not as recognizing a constitutional tort action against a non-governmental defendant but rather as holding that, by being federally funded, an entity may become a federal actor." Reuber v. United States, 750 F.2d 1039, 1071 n. 4 (D.C.Cir.1984) (Starr, J., dissenting in part). "That line of analysis is clearly cut off," Judge Starr went on to note, "by the later Supreme Court holding in Blum v. Yaretsky, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) (state funding of a facility does not convert action by the facility into state action)."
 
 
 46
 Wagner, as I read it, is consistent with the view expressed by the First Circuit in Fletcher v. Rhode Island Hospital Trust National Bank, 496 F.2d 927, 932 n. 8 (1st Cir.) ("While federal officers may, at times, be subject to suit for unconstitutional behavior, see Bivens ... there is no cause of action against private parties acting under color of federal law or custom"), cert. denied, 419 U.S. 1001, 95 S.Ct. 320, 42 L.Ed.2d 277 (1974). The majority of circuits that have addressed the issue, however, have concluded that there may be circumstances under which a Bivens action will lie against a person who is not a federal officer.[2] If our circuit precedent rule does not require this court to hold that Bivens claims may be asserted only against federal employees, I am still not persuaded that the plaintiffs' amended complaint states such a claim against the attorney defendants in the case at bar.
 
 
 47
 Even under the approach followed by the majority of our sister circuits that have addressed the issue, it is clear that constitutional damage actions against private actors will not be recognized by the courts where there are special factors that make such recognition inappropriate. See Reuber, 750 F.2d at 1069 (Starr, J., dissenting in part). I believe that recognition of a Bivens action is not appropriate here.
 
 
 48
 For one thing, an impartial federal judge decided that the defendant attorneys were entitled to precisely the type of order they sought to obtain for their client. The order was too broad, as we now know, but in the absence of affirmative action by Congress to create a cause of action against attorneys who are the beneficiaries of judicial error, it seems to me that this court should be very hesitant about creating such a cause of action by implication. Today's decision may well have a chilling effect on aggressive lawyering in the future--and the factual situation with which the defendant attorneys were confronted in this case was one that certainly seemed to call for aggressive lawyering, in my view.
 
 
 49
 I realize that the defendants may still assert a good faith defense to the plaintiffs' Bivens claims. Litigation of even the strongest defense entails some degree of risk, however--and I would not subject the defendant attorneys to that risk, or to the costs, in time and money, that reversal of the dismissal will require them to bear.
 
 
 50
 As to the state law tort claims, the plaintiffs have no cause of action against the defendant attorneys unless the attorneys acted with malice. Malice may be averred generally, under Rule 9(b), Fed.R.Civ.P., but there must still be factual allegations giving rise to a "strong inference" that the defendants acted with the requisite state of mind. See Beck v. Manufacturers Hanover Trust Co., 820 F.2d 46, 50 (2d Cir.1987), cert. denied, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988), overruled on other grounds, United States v. Indelicato, 865 F.2d 1370 (2d Cir.1989). Like the district court, I think the plaintiffs' complaint is deficient in this respect.
 
 
 
 [1]
 Victims of constitutional violations by federal employees or agents may maintain so-called Bivens claims for damages, despite the absence of any statute specifically conferring such a right. Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 390-97, 91 S.Ct. 1999, 2001-05, 29 L.Ed.2d 619 (1971)
 
 
 [2]
 This obscure statute, as one treatise puts it, has "little if any present utility and [is] more a source of confusion than anything else." 13B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3578 (1984)
 
 
 [3]
 The individual plaintiffs' addition of the Bivens claim after removal, which clearly presents a federal question, cured any potential jurisdictional deficiency that may have existed in the removal. See Grubbs v. General Elec. Credit Corp., 405 U.S. 699, 702-03, 92 S.Ct. 1344, 1347-48, 31 L.Ed.2d 612 (1972) We express no opinion on whether the district court had jurisdiction before the plaintiffs added the Bivens claim to their complaint
 
 
 [4]
 Pursuant to a settlement agreement, attorney Martin and the firm of Marshall & Melhorn were dismissed from the case. Thus, the only remaining attorney defendants are Clemens and his firm, Howard & Howard
 
 
 [5]
 We thus need not, at this juncture, reach the plaintiff's Fourth Amendment arguments as they pertain both to the ex parte order issued in the prior case and to the federal copyright laws. Those arguments will, of course, be relevant on the issue of whether the defendants acted in good faith in seeking and executing the ex parte order
 
 
 [6]
 In their reply brief, the plaintiffs state that they accuse the lay defendants only of abuse of process and invasion of privacy. We thus will not address any of the other torts alleged in the complaint as they might potentially relate to the lay defendants
 
 
 [7]
 The complaint alleges that the defendants "reviewed confidential documents, records, and files belonging to Plaintiffs." Joint Appendix at 39. Because this allegation can be read to imply that the defendants gained improper access to the individual plaintiffs' property, we reject the defendants' argument that the plaintiffs cannot assert an invasion of privacy claim on the facts as alleged. See Okura & Co. v. Careau Group, 783 F.Supp. 482, 505-06 (C.D.Cal.1991) (indicating that employees may have a reasonable expectation of privacy in their offices) (citing O'Connor v. Ortega, 480 U.S. 709, 717-19, 107 S.Ct. 1492, 1497-99, 94 L.Ed.2d 714 (1987))
 
 
 [1]
 In a subsequent case where both Judge Martin and Judge Krupansky--the author of Wagner--were on the panel, the court observed that in Wagner it had refused to extend liability in Bivens actions beyond "federal officers." Nguyen v. Michigan, No. 92-1657, 1993 WL 281462, at * 1 (6th Cir. July 27, 1993) (unpublished)
 
 
 [2]
 See Schowengerdt v. General Dynamics Corp., 823 F.2d 1328, 1337-1339 (9th Cir.1987); Reuber v. United States, 750 F.2d 1039 (D.C.Cir.1984); Dobyns v. E-Systems, Inc., 667 F.2d 1219 (5th Cir.1982)